IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL FREELANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-03089-SRB |
| | ) | |
| STATE AUTO PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Before the Court is Defendant State Auto Property and Casualty Insurance Company's ("State Auto") Motion for Summary Judgment. (Doc. #108.) For the reasons stated below, the motion is DENIED.

**I. BACKGROUND**

This insurance-coverage dispute arises under a commercial property insurance policy (the "Policy") that State Auto issued to Plaintiff Michael Freelander ("Freelander"). To resolve the pending motion, the Court finds the following facts are undisputed.[1]

Freelander owns a commercial building located at 630 George Street, Marshfield, Missouri (the "Property"). In April 2018, Marshfield Fire Chief Michael Taylor ("Chief Taylor") inspected the Property and found nine conditions in violation of municipal fire and safety codes. During subsequent inspections, Chief Taylor found that some of the identified violations were corrected, but many remained. For example, Chief Taylor's October 16, 2018,

---

[1] The Court notes that the applicable standard requires the facts to be viewed in the light most favorable to the nonmoving party, Freelander. The relevant facts are taken from the record, including the parties' briefs and exhibits. Only those facts necessary to resolve the pending motion are discussed, and those facts are simplified to the extent possible. Additional facts relevant to the parties' arguments are set forth in Section III.

Inspection Report lists the following outstanding Property conditions in violation of municipal code:

> 1. North and South Suppression System out of service[.]
> 2. Combustible or corrosive chemicals still present in facility[.]
> 3. Fire Alarm system still out of service[.]
> 4. Address Signage not provided[.]
> 5. Signage on sprinkler control rooms absent[.]
> 6. Missing ceiling tiles in the office area[.]
> 7. Ensure all lighted exit signs are functioning[.]
> 8. Supervisory and tamper switches on risers repaired and monitored.
> 9. Missing roof leading to the freezing of the suppression system, Roofing must be repaired as to meet the International Property Maintenance Code.

(Doc. #109-4, p. 15.)[2]

On October 29, 2018, Chief Taylor issued a municipal citation to Freelander because of his failure to timely correct the code violations. On February 5, 2019, Chief Taylor reinspected the Property. In the afternoon after the reinspection, Chief Taylor emailed Freelander and noted several code violations:

> 1. Building IA and 1B fire sprinkler riser gauge not indicating proper pressure[.]
> 2. Repair or replace all non-functioning exit signs and emergency lighting[.]
> 3. Replace missing sprinkler heads in all fire sprinkler riser rooms[.]
> 4. Repair or replace fire alarm speakers as to provide for an audible alarm[.]
> 5. Remove all old combustible, toxic, or corrosive chemicals left from previous manufacturing process[es.]
> 6. Replace all missing ceiling tiles in the office area[.]
> 7. Complete required roof repairs[.]

(Doc. #109-6, p. 1.) Freelander emailed Chief Taylor later that day explaining that he will "be taking care of all these Items over the next several days[.]" (Doc. #109-7, p. 1.)

On February 6, 2019, Freelander completed an insurance application seeking from State Auto commercial liability, commercial property, and umbrella coverage for the Property (the "Insurance Application"). The Insurance Application required Freelander to answer questions

---

[2] All page numbers refer to pagination automatically generated by CM/ECF.

2

Case 6:20-cv-03089-SRB   Document 127   Filed 03/29/22   Page 2 of 13

about the Property's condition, including, "ANY UNCORRECTED FIRE AND/OR SAFETY CODE VIOLATIONS?" (Doc. #109-2, p. 3.) In response to this question, Freelander answered "N" for "no." (Doc. #109-2, p. 6.) Directly above Freelander's signature, the Insurance Application reads:

> THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE INQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

(Doc. #109-2, p. 4.)

State Auto processed the Insurance Application and issued Freelander the Policy with a coverage period of February 6, 2019 to February 6, 2020. The Policy contains the following provision:

> **A. CONCEALMENT, MISREPRESENTATION OR FRAUD**
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
>     **1.** This Coverage Part;
>     **2.** The Covered Property;
>     **3.** Your interest in the Covered property; or
>     **4.** A claim under this Coverage Part.

(Doc. #109-3, p. 35) (the "Concealment Provision").

On February 6, 2019, a windstorm struck the Property, damaging the roof and structure of the building. Freelander filed a claim with State Auto seeking coverage under the Policy for the Property's sustained damage. State Auto denied Freelander's claim.

On February 15, 2019, Freelander emailed Paul Link ("Link"), the Marshfield City Attorney assigned to oversee the Property's code violations. In that email, Freelander acknowledged Chief Taylor's February 5, 2019, email, and in part told Link that the roof repair

3

"is complete and water tight, but the gutter work is not finished." (Doc. #109-8.) Chief Taylor again inspected the Property on February 19, 2019, and determined the previously noted violations had been corrected.

Freelander filed suit against State Auto in the Circuit Court of Webster County, Missouri, alleging breach of contract (Count I) and vexatious refusal to pay (Count II) based on State Auto's denial of Freelander's property-damage claim. State Auto removed the suit to federal court based on diversity jurisdiction. State Auto now moves for summary judgment, arguing the Policy is void because Freelander made material misrepresentations on the Insurance Application. Freelander opposes the motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if (1) the moving party "shows that there is no genuine dispute of material fact" and (2) the moving party is "entitled to judgment as a matter of law." A nonmoving party survives a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, is "such that a reasonable jury could return a verdict for the nonmoving party." *Stuart C. Irby Co. v. Tipton*, 796 F.3d 918, 922 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"When, as here, federal jurisdiction is based on diversity of citizenship, state law governs the interpretation of insurance policies." *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 447 (8th Cir. 2016) (cleaned up). The parties do not dispute that Missouri law governs this case. Thus, the Court is "bound by the Supreme Court of Missouri's decisions." *Olga Despotis Tr. v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1059 (8th Cir. 2017) (citing *W. Heritage Ins. Co. v. Asphalt Wizards*, 795 F.3d 832, 837 (8th Cir. 2015)).

4

## III. DISCUSSION

State Auto argues it is entitled to summary judgment because Freelander falsely warranted the Property was not in violation of any local fire or safety codes. State Auto also argues the Concealment Provision voids the Policy because Freelander's material misrepresentation was intentional. Freelander disagrees, arguing that genuine issues of material fact exist about (1) whether any fire or safety code violations existed at the time Freelander signed the Insurance Application, (2) the materiality of any alleged misrepresentation, and (3) whether Freelander's alleged misrepresentation was intentional. These arguments are addressed below.

### A. Warranted Representations on the Insurance Application

State Auto argues that the Policy is void because Freelander warranted the truth of his answers on the Insurance Application, including his false and material answer that the Property had no uncorrected fire or safety code violations. Under Missouri law, "'an insurance company may avoid a policy by showing that a representation is both false and material when . . . the representation is warranted to be true.'" *Cedar Hill Hardware and Const. Supply Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 346 (8th Cir. 2009) (quoting *Shirkey v. Guarantee Trust Life & Ins. Co.*, 141 S.W.3d 62, 67 (Mo. App. W.D. 2004)). A primary "difference between a warranty and a representation in insurance law is that a warranty must be strictly true while a representation need only be substantially true." *Scheutzel v. Grand Aerie Fraternal Order of Eagles*, 164 S.W.2d 135, 139 (Mo. Ct. App. 1942). "In the law of insurance the courts do not favor warranties. . . . [U]nless it is clearly shown by the form of the contract to have been intended by both parties to be a warranty, to be strictly and literally complied with, it will be held to be a representation." *Cohen v. Metro Life Ins. Co.*, 444 S.W.2d 498, 504 (Mo. Ct. App. 1969).

5

When an applicant attests that the answers are "correct and complete to the best of [his] knowledge," the Court is "interested in his state of mind at the time he signed the application." *Shirkey*, 141 S.W.3d at 68. Under these circumstances, the undersigned does "not warrant that his representation . . . was true." *Id.*

Here, Freelander attested his answers on the Insurance Application were "true, correct and complete to the best of [his] knowledge." (Doc. #109-2, p. 4.) Under Missouri law, this attestation does not rise to a warranty because the form of the Insurance Application does not clearly show that Freelander warranted his answers "were fully complete and literally true[.]" *Hereford v. Mystic Workers of the World*, 207 S.W. 76, 76 (Mo. App. 1918) (discussing warranties on an insurance application).[3] Accordingly, the Court rejects State Auto's motion for summary judgment on this point.

### B. The Concealment Provision

The Concealment Provision provides that the Policy is void if Freelander "at any time, intentionally conceals or misrepresents a material fact" concerning the condition of the Property. (Doc. #109-3, p. 35.) In examining an insurance policy with identical language, the Eighth Circuit determined that "the insurer may void the policy in the event of a false and material intentional representation." *Ceder Hill*, 563 F.3d at 346 (applying Missouri law). State Auto argues that Freelander's representation that the Property did not have outstanding code violations on the Insurance Application was false, material, and intentional. Freelander argues genuine issues of material fact exist regarding these issues. Each element is addressed below.

---

[3] As discussed in Section III.B., even if the Court found that Freelander did warrant the truth of his answers, there are genuine issues of material fact regarding whether Freelander's representation was false and material.

6

1. **Misrepresentation**

State Auto contends that Freelander misrepresented on the Insurance Application that the Property did not have outstanding fire or safety code violations. To prove the falsity of this representation, State Auto points to the February 5, 2019, email Chief Taylor sent to Freelander identifying seven Property conditions Chief Taylor listed as violating municipal code:

> 1. Building IA and 1B fire sprinkler riser gauge not indicating proper pressure[.]
> 2. Repair or replace all non-functioning exit signs and emergency lighting[.]
> 3. Replace missing sprinkler heads in all fire sprinkler riser rooms[.]
> 4. Repair or replace fire alarm speakers as to provide for an audible alarm[.]
> 5. Remove all old combustible, toxic, or corrosive chemicals left from previous manufacturing process[es.]
> 6. Replace all missing ceiling tiles in the office area[.]
> 7. Complete required roof repairs[.]

(Doc. #109-6, p. 1) ("Conditions 1 – 7"). Freelander argues, in part, that there are genuine issues of material fact about the condition of the Property when Freelander signed the Insurance Application.[4] (Doc. #122, pp. 14-15.) Upon review, the Court agrees that State Auto has failed to establish as a matter of law that Freelander's representations on the Insurance Application were false. Each condition identified by Chief Taylor is discussed below.

Regarding Condition 1, "Building IA and 1B fire sprinkler riser gauge not indicating proper pressure," and Condition 3, "Replace missing sprinkler heads in all fire sprinkler riser rooms," State Auto relies on an invoice from Mainline Fire Protection. That invoice states that Mainline Fire Protection worked on the Property's sprinkler system on February 19, 2019, including work on the accelerator, fixing an air compressor broken belt, and installing sprinkler heads. (Doc. #109-9.) State Auto argues this demonstrates that Condition 1 and Condition 3

---

[4] Freelander argues that "Defendant merely relies upon a conclusory assertion of a code violation by [Chief Taylor] who has not even been designated as an expert in this matter." (Doc. #122, p. 14.) Freelander does not cite any authority or otherwise explain why Chief Taylor needs to be designated as an expert to testify to his personal knowledge of the Property's conditions and whether those conditions violated applicable fire or safety codes. In turn, the Court need not address this argument for the purpose of resolving the motion for summary judgment.

were outstanding at the time Freelander signed the Insurance Application. In response, Freelander attaches an invoice from Atlas Security from November 28, 2018, which states that Atlas Security:

> Tested sprinkler system with Mainline Sprinkler and corrected any issues found on the fire system. Found power issues and wiring issues all of which were corrected. Fire system purchased by and serviced by Atlas Security is working normally at this point.

(Doc. #122-5, p. 1.) Freelander argues that Condition 1 and Condition 3 were not listed on any previous inspection report and Chief Taylor, and State Auto does not identify which sections of code that these conditions violate. The Court finds Freelander has identified genuine disputes as to whether the sprinkler system was malfunctioning, and whether the status of the sprinkler system on February 6, 2019, violated municipal code.

Regarding Condition 2, "Repair or replace all non-functioning exit signs and emergency lighting," Freelander explains in an attached affidavit that "a fuse had been shut off" and in the afternoon on February 5, 2019, he "had an electrician working in the north building correct the issue." (Doc. #121-1, p. 2.) Regarding Condition 4, "repair or replace fire alarm speakers as to provide for an audible alarm," Freelander states in his affidavit that the "fire alarm speakers were not providing an audible alarm because the manual switch for the audio speaker was turned off. I had Atlas Security confirm the issue and then I turned on the speaker before I signed the Insurance Application." (Doc. #121-1, p. 3.) Regarding Condition 6,[5] "Replace all missing ceiling tiles in the office area," Freelander states he replaced the missing ceiling tiles before signing the Insurance Application. Regarding Condition 7, "Complete required roof repairs,"

---

[5] Neither party discusses Condition 5, "Remove all old combustible, toxic, or corrosive chemicals left from previous manufacturing processes," including whether that issue was remedied prior to Freelander filing the Insurance Application or if that representation was material. As such, the Court State Auto has not established it is entitled to summary judgment on this point.

Freelander explains, "Kirberg Roofing Company completed all necessary repairs to the roof of the Property on February 5, 2019 before [he] signed the Insurance Application." (Doc. #122-1.) Freelander's affidavit is corroborated by another individual, Sam Harness, who testified that "the roof was watertight by February 5th" and other identified damage to the roof was repaired. (Doc. #122-3, p. 2.)

In its reply brief, State Auto summarily argues that Freelander's attempts to dispute the condition of the Property at the time he signed the Insurance Application cannot defeat the summary judgment motion because Chief Taylor "did not declare the property to be clear of violations until February 19, 2019." (Doc. #126, p. 11.) However, State Auto provides no evidence or law which states that once the Property's condition was deemed in violation of municipal code by Chief Taylor, Freelander's subsequent remedial efforts to fix the Property are not relevant simply because Chief Taylor did not reinspect the property until February 19, 2019. Instead, the Court finds Freelander has presented evidence that there were no outstanding code violations when he signed the Insurance Application on February 6, 2019.

State Auto argues that in Freelander's February 15, 2019, email to Link, the Marshfield City Attorney assigned to oversee the Property's alleged code violations, "[Freelander] explicitly stated to Mr. Link that [Freelander] had not completed all repairs necessary to remediate the fire and safety code violations identified at the February 5, 2019 inspection." (Doc. #109, p. 12.) But, in his email to Link, Freelander wrote, "I want you to know I've taken every step to meet the requirements of Chief Mike Taylor[.]" (Doc. #109-8, p. 1.) Although Freelander also states the only unfinished work is "gutter work," Chief Taylor's February 5, 2019, email does not identify gutter work as a code violation.

9

In turn, the Court finds genuine issues of material fact exist regarding whether Freelander misrepresented that the Property had no outstanding code violations when Freelander signed the Insurance Application. State Auto's motion for summary judgment is thus denied.

## 2. Materiality

"A misrepresentation of fact is deemed material if the fact, stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium." *Central Bank of Lake of the Ozarks v. Fire Marine Ins. Co.*, 975 S.W.2d 222, 225 (Mo. App. W.D. 1998). "The standard is whether a reasonable person should have expected that the misrepresentation within the insurance application would influence the insurance company's decision to accept the risk and issue the policy and in determining the premium to charge – not whether the misrepresentation actually influenced the insurer." *Id.* "That the fact misrepresented has no subsequent relation to the manner in which the event insured against occurred, does not make it any the less material to the risk." *Id.* (internal citation and quotation marks omitted).

State Auto argues that Freelander's alleged misrepresentation of the Property's code violations was material. In support, State Auto relies on an affidavit from Cara Loehkre ("Loehkre"), a Commercial Lines Underwriting Manager at State Auto. Loehkre states that underwriters at State Auto "rely on the truth and accuracy of such information in making a decision on whether to accept or reject a given risk and assessing the premium to be paid, should State Auto decide to accept such risk." (Doc. #109-12, p. 2.) Loehkre also states that if Freelander "had provided truthful and accurate information . . . and made State Auto aware of the fire/safety code violations on the date of application, then State Auto would have rejected the given risk and declined to write the policy at issue." (Doc. #109-12, p. 2.) Freelander argues, in

part, that "[State Auto] has not provided any summary judgment evidence regarding how the alleged misrepresentation by [Freelander] would have likely affected the conduct of those engaged in the insurance business acting reasonably and naturally in accord with custom and practice among such companies under such circumstances." (Doc. #122, p. 17-18.)

The Court finds that State Auto has not established materiality as a matter of law. While Loehkre testifies generally that Freelander's answer on the Insurance Application regarding whether the Property has any fire or safety code violations is material, State Auto produces no evidence that any particular condition of the Property, and the misrepresentation of that condition, was in fact material. State Auto fails to demonstrate why, for example, missing ceiling tiles would be a material risk in insuring the Property.

"Generally, the question of whether the misrepresentations in an application material were is one for the trier of fact to decide." *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 395 (Mo. App. W.D. 1993). "However, when a misrepresentation is of such a nature that all minds would agree that it is or is not material, the question is appropriately considered to be a question of law for the court." *Id.* Given the genuine issues of material fact of whether Freelander remedied the conditions identified by Chief Taylor prior to Freelander signing the Insurance Application, the Court finds that the disputed misrepresentation in this case is not of such a nature that materiality may be determined as a matter of law. While State Auto argues Loehkre's affidavit is permissible to support an assertion of fact under Federal Rule of Civil Procedure 56(c), a jury could choose to disbelieve her conclusions regarding materiality. State Auto thus fails to establish materiality at the summary judgment stage.

### 3. Intent

"[T]o intentionally misrepresent a fact is to make a false statement with the intent to deceive the hearer." *Cedar Hill*, 563 F.3d at 347 (internal citation and quotation marks omitted). State Auto argues that because Freelander knew the Property was in violation of fire and safety codes, Freelander "intended to misrepresent this fact when he represented that the subject property had no outstanding uncorrected fire and/or safety code violations." (Doc. #109, p. 17.) Freelander argues that he has "denied that he made any false representations, and so this issue is properly a question of fact for the jury." (Doc. #122, p. 17.)

"[A]n intent to deceive may be inferred where a false statement, which by its very nature is calculated to defraud, is made with knowledge of its falsity." *Keystone Mut. Ins. Co. v. Kuntz*, 507 S.W.3d 162, 167-68 (Mo. App. S.D. 2016) (internal citation and quotation marks omitted). "However, nothing requires a finder of fact to make that inference." *Id.* (reversing a granting of summary judgment when the trial court inferred intent based on falsity of the representations "because that inference favored the moving party").

As explained above, the Court finds genuine issues of material fact exist as to whether Freelander mispresented the condition of the Property on the Insurance Application. Even if the Court found that Freelander knew his representations were false, because the Court must draw all reasonable inference in favor of Freelander, State Auto is not entitled to summary judgment on this issue. While a jury may infer that Freelander intended to deceive State Auto after finding that he knew he misrepresented the Property's condition, that inference is not required. In turn, the Court finds that genuine issues of material fact exist as to Freelander's intent when he filled out the Insurance Application. State Auto's motion for summary judgment is thus denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that State Auto's Motion for Summary Judgment (Doc. #108) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: March 29, 2022